# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE,<br>    Plaintiff<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>    Defendant | No. 1:19-cv-1673<br><br>(Judge Kane) |

## MEMORANDUM

Presently before the Court is pro se Plaintiff John Doe ("Plaintiff")'s emergency motion for injunctive relief. (Doc. No. 16.) For the reasons that follow, the Court will deny the motion.

## I.  BACKGROUND

Plaintiff, who is presently confined at the Federal Correctional Complex in Coleman, Florida ("FCC Coleman"), initiated the above-captioned civil action on September 16, 2019 by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA") in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 1.) In his complaint, Plaintiff alleges that on November 12, 2015, Ryan Smith, a case manager at USP Lewisburg, told other prisoners that Plaintiff was a "rat" and a rapist. (Id. at 1.) Prisoners subsequently began researching Plaintiff using electronic sources and "began reading aloud Plaintiff's case orders and opinions on the open range." (Id.) Plaintiff maintains that he was "perpetually threatened, taunted[,] and sexually harassed." (Id.) On November 17, 2015, Plaintiff was attacked by his cellmate. (Id.) Plaintiff alleges that various groups of prisoners continued to research his case information and threaten and harass him until he was transferred from USP Lewisburg on April 24, 2017. (Id. at 2.) On May 3, 2017, Plaintiff arrived at USP McCreary, where he was "physically confronted by prisoners [who] transferred from USP Lewisburg" on several occasions. (Id.) Plaintiff had to "physically defend himself" on several occasions. (Id.) On

August 3, 2018, Plaintiff was transferred to USP Lewisburg, where he was assigned to the G-Unit and was again confronted for being a "rat" and a rapist. (Id.) Approximately one (1) month later, Plaintiff was reassigned to the E-Unit, where he was threatened, taunted, and labeled as a "rat" and a sex offender by prisoners in that unit. (Id.)

Plaintiff maintains that he has filed numerous motions with the respective courts to have his case information sealed and/or redacted, but that those motions have been denied. (Id.) He alleges that "[p]rison officials ha[ve] failed miserably with containing this issue as well as addressing it." (Id. at 3.) Plaintiff asserts that he has requested to be placed in protective custody or to be transferred to state custody or "designated institutions that address his security concerns," but his requests have been "ignored." (Id.) As relief, Plaintiff seeks $1,000,000.00 in damages, as well as a Court Order directing that he be transferred to either state custody or a federal correctional institution. (Id.)

Plaintiff also filed a motion for leave to proceed using the John Doe pseudonym (Doc. Nos. 2, 6) and a copy of his prisoner trust fund account statement (Doc. No. 3). In an Order dated September 24, 2019, the United States District Court for the Eastern District of Pennsylvania transferred the case to this Court because Plaintiff's complaint concerns events that occurred while he was incarcerated at USP Lewisburg, which is located within this judicial district. (Doc. No. 4.) In an administrative Order dated October 2, 2019, the Court directed Plaintiff either to pay the requisite filing fee or submit a motion for leave to proceed in forma pauperis within thirty (30) days. (Doc. No. 9.) The administrative Order was returned as undeliverable with a note that the Bureau of Prisons ("BOP") required Plaintiff's actual name to deliver his mail from the Court. (Doc. No. 10.) On October 21, 2019, the Court issued another administrative Order, addressed with Plaintiff's actual name, directing him either to pay the

requisite filing fee or submit a motion for leave to proceed in forma pauperis within thirty (30) days. (Doc. No. 11.) The Court received Plaintiff's motion for leave to proceed in forma pauperis on October 31, 2019. (Doc. No. 12.)

In a Memorandum and Order dated November 21, 2019, the Court granted Plaintiff leave to proceed in forma pauperis, as well as leave to proceed under the John Doe pseudonym. (Doc. Nos. 13, 14.) The Court also performed its mandatory screening of the complaint pursuant to the Prison Litigation Reform Act of 1995 ("PLRA")[1] and concluded that Plaintiff's complaint set forth a plausible failure to protect claim under the FTCA. (Doc. No. 13 at 5-6.) The Court, therefore, directed that the Clerk of Court issue summonses so that the United States Marshal Service could effect service of Plaintiff's complaint upon the United States of America. (Doc. No. 14.) A review of the docket reveals that, to date, only the summons issued to the Attorney General has been returned to the Court. (Doc. No. 21.)

Plaintiff filed the instant emergency motion for injunctive relief (Doc. No. 16) and brief in support thereof (Doc. No. 17) on December 13, 2019. In his motion, Plaintiff requests a transfer "for his safety" because rumors have spread throughout FCC Coleman "that Plaintiff is a sex offender and rat." (Id. at 2.) Due to Plaintiff's allegations of potential immediate harm, the Court directed the Government to respond promptly to Plaintiff's motion in an Order entered on December 13, 2019. (Doc. No. 18.) The United States of America filed a response on December 18, 2019, arguing that: (1) the Court should deny Plaintiff's motion because it lacks jurisdiction over his claims and Plaintiff cannot establish a legal basis for the relief sought; (2) the Court should screen Plaintiff's complaint and dismiss it; and (3) alternatively, the Court should transfer

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

this matter to the Middle District of Florida. (Doc. No. 19 at 4.) Plaintiff filed his reply brief on January 6, 2020, maintaining that if this Court "will not order the BOP to send Plaintiff to state custody the he will continue to deal with this issue and somebody will be killed." (Doc. No. 20 at 2.)

## II.    DISCUSSION

### A.    Applicable Legal Standard

Preliminary injunctive relief is extraordinary in nature and is discretionary with the trial judge. See Orson, Inc. v. Miramax Film Corp., 836 F. Spp. 309, 311 (E.D. Pa. 1993) (citing Skehan v. Bd. of Tr. of Bloomsburg State Coll., 353 F. Supp. 542 (M.D. Pa. 1973)). In determining whether to grant a motion seeking preliminary injunctive relief, courts within the Third Circuit consider the following four factors: (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the conduct complained of; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)). To prove "irreparable injury" a plaintiff must demonstrate actual and immediate injury rather than a possibility of future harm. See Cont't Grp., Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir. 1980). It is the moving party that bears the burden of demonstrating these factors. See Dorfman v. Moorhous, No. 93-cv-6120, 1993 WL 483166, at *1 (E.D. Pa. Nov. 24, 1993). "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985). Furthermore, "there must be a relationship between the injury claimed in the

party's motion and the conduct asserted in the complaint." See Ball v. Famiglio, 396 F. App'x 836, 837 (3d Cir. 2010) (internal quotation marks omitted) (quoting Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010)).

Moreover, "[t]he 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" See ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (quoting Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "The key word in this consideration is irreparable. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

**B.     Whether Plaintiff's Motion for Injunctive Relief Should Be Granted**

As an initial matter, the Court agrees with the United States that injunctive relief is not available to Plaintiff under the FTCA. See Michtavi v. United States, 345 F. App'x 727, 730 n.4 (3d Cir. 2009). In any event, Plaintiff has not demonstrated that he is entitled to preliminary injunctive relief under the standards outlined above. Plaintiff's assertion that he is in danger based upon rumors that he is a "sex offender and rat" is simply too speculative to demonstrate that he is likely to suffer irreparable harm absent the relief he seeks. See Milhouse v. O'Brien, No. 1:15-cv-714, 2015 WL 6501250, at *3 (M.D. Pa. Oct. 27, 2015); Little v. Mottern, No. 1:14-cv-953, 2015 WL 5954598, at *1-2 (M.D. Pa. Oct. 13, 2015). Moreover, the United States has

5

attached a declaration from Jonathan Kerr, an attorney at USP Lewisburg, indicating that on December 18, 2019, the Special Investigative Services Department ("SIS") at FCC Coleman interviewed Plaintiff regarding his allegations of imminent danger. (Doc. No. 19-1 ¶¶ 3-4.) During that interview, Plaintiff "conveyed to [SIS staff] he is not in danger at USP Coleman I, that no inmate there has threatened him, assaulted him, or abused him." (Id. ¶ 4.) SIS staff also noted that Plaintiff had been in general population since his arrival at FCC Coleman without incident and had not requested protective custody or articulated any safety concerns to staff. (Id.)

Moreover, it is well settled that a prisoner has no constitutional right to choose his place of confinement or housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983). With respect to federal inmates, the BOP has the power to "transfer a prisoner from one facility to another at any time." See Prows v. Fed. Bureau of Prisons, 981 F.2d 466, 468 n.3 (10th Cir. 1992). "It is clear that decisions regarding [Plaintiff's] designation are within the sound discretion of the BOP." See Milhouse, 2015 WL 6501250, at *4. Accordingly, any inquiry by this Court into matters of prison administration, such as the designation of federal inmates to certain institutions, "would necessarily interfere with the administration's right to police its penal system." See id. For these reasons, therefore, the Court will deny Plaintiff's emergency motion for injunctive relief. (Doc. No. 16.)

C. **Sufficiency of Plaintiff's Complaint**

The Government argues further that this Court should dismiss Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915A & 1915(e)(2) because it "does not state a claim under the FTCA." (Doc. No. 19 at 10.) The Government argues that Plaintiff has not pled any breach of duty, causation, or damages. (Id.) Alternatively, the Government argues that the Court should

transfer the above-captioned case to the Middle District of Florida because "to the extent Doe is subject to unsafe conditions, those conditions exist at the USP Coleman, which is in the Middle District of Florida." (Id. at 11.)

As noted above, Plaintiff alleges that Ryan Smith, a Unit Manager at USP Lewisburg, told other inmates that Plaintiff is a "rat" and a rapist and that ever since then, he has been threatened, assaulted, and taunted by other inmates. (Doc. No. 1.) Plaintiff maintains further that BOP officials have not done anything to address his concerns. (Id.) In its November 21, 2019 Memorandum and Order, the Court construed Plaintiff's complaint to allege a claim of negligence under the FTCA based upon allegations of staff at USP Lewisburg failing to protect Plaintiff from other inmates and concluded that Plaintiff had set forth a plausible claim under the FTCA. (Doc. No. 13 at 5-6 (citing Belcher v. United States, 4:03-cv-1252, 2007 WL 2155696, at *3 (M.D. Pa. July 25, 2007)); see also Miller v. Leathers, 913 F.2d 1085, 1088 n.1 (4th Cir. 1990) (observing that "[i]t is impossible to minimize the possible consequences to a prisoner of being labelled a 'snitch'"); Lacy v. DeLong, No. 2:13-cv-14813, 2016 WL 3566242, at *7 (noting that "courts have found that negatively labeling an inmate can evince deliberate indifference to that inmate's safety whether or not the label ever actually results in any physical attack").

The Court maintains its conclusion that Plaintiff has set forth a plausible claim under the FTCA. Plaintiff's complaint, however, seeks both monetary relief and injunctive relief in the form of a transfer. (Doc. No. 1 at 3.) Plaintiff's request for injunctive relief will be dismissed because, as noted above, such relief is not available to Plaintiff under the FTCA. See Michtavi, 345 F. App'x at 730 n.4. Accordingly, Plaintiff may proceed only on his claim for damages. Moreover, because Plaintiff is alleging that staff at USP Lewisburg were negligent, the Court

will not transfer the above-captioned case to the Middle District of Florida. If Plaintiff seeks to proceed on claims regarding conditions at FCC Coleman, he is free to do so by initiating a new suit in the proper court.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's emergency motion for injunctive relief. (Doc. No. 16.) The Court will also dismiss Plaintiff's request for injunctive relief set forth in his complaint (Doc. No. 1), deny the Government's requests to dismiss Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915A & 1915(e)(2) or, alternatively, to transfer the above-captioned case to the Middle District of Florida, and direct the Government to answer or otherwise respond to the complaint.[2] An appropriate Order follows.

---

[2] The Court has been made aware that the United States Marshal Service never received a copy of the complaint and summons to serve on the United States Attorney, as required by Rule 4(i) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 4(i)(1). The Court, however, declines to direct service again because the Government has already entered an appearance in the above-captioned case. See Foxworth v. Major, No. 8:08-2795-CMC-BHH, 2009 WL 398100, at *1 (D.S.C. Feb. 17, 2009) (concluding that "the Marshal's inability to effect formal service upon [certain defendants] was, so to speak, rendered 'moot' by the general appearance by their counsel").