IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN DOE,
    Plaintiff,

    v.

UNITED STATES OF AMERICA,
    Defendant

No. 1:19-cv-1673

(Judge Kane)

## MEMORANDUM

Presently before the Court is the United States of America's motion for summary judgment. (Doc. No. 26.) For the reasons set forth below, the Court will grant the motion.

**I.    BACKGROUND**

Pro se Plaintiff John Doe ("Plaintiff"), who is presently confined at the Federal Correctional Complex in Coleman, Florida ("FCC Coleman"), initiated the above-captioned case on September 16, 2019 by filing a complaint pursuant to the Federal Tort Claims Act ("FTCA") in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 1.) In his complaint, Plaintiff alleges that on November 12, 2015, Ryan Smith, a case manager at USP Lewisburg, told other prisoners that Plaintiff was a "rat" and a rapist. (Id. at 1.) Prisoners subsequently began researching Plaintiff using electronic sources and "began reading aloud Plaintiff's case orders and opinions on the open range." (Id.) Plaintiff maintains that he was "perpetually threatened, taunted[,] and sexually harassed." (Id.) On November 17, 2015, Plaintiff was attacked by his cellmate. (Id.) Plaintiff alleges that various groups of prisoners continued to research his case information and threaten and harass him until he was transferred from USP Lewisburg on April 24, 2017. (Id. at 2.) On May 3, 2017, Plaintiff arrived at USP McCreary, where he was "physically confronted by prisoners [who] transferred from USP Lewisburg" on several occasions. (Id.) Plaintiff had to "physically defend himself" on several

occasions.  (Id.)  On August 3, 2018, Plaintiff was transferred to USP Lewisburg, where he was assigned to the G-Unit and was again confronted for being a "rat" and a rapist.  (Id.)  Approximately one (1) month later, Plaintiff was reassigned to the E-Unit, where he was threatened, taunted, and labeled as a "rat" and a sex offender by prisoners in that unit.  (Id.)

Plaintiff maintains that he has filed numerous motions with the respective courts to have his case information sealed and/or redacted, but that those motions have been denied.  (Id.)  He alleges that "[p]rison officials ha[ve] failed miserably with containing this issue as well as addressing it."  (Id. at 3.)  Plaintiff asserts that he has requested to be placed in protective custody or to be transferred to state custody or "designated institutions that address his security concerns," but his requests have been "ignored."  (Id.)  As relief, Plaintiff seeks $1,000,000.00 in damages, as well as a Court Order directing that he be transferred to either state custody or a federal correctional institution.  (Id.)

Plaintiff also filed a motion for leave to proceed using the John Doe pseudonym (Doc. Nos. 2, 6) and a copy of his prisoner trust fund account statement (Doc. No. 3).  In an Order dated September 24, 2019, the United States District Court for the Eastern District of Pennsylvania transferred the case to this Court because Plaintiff's complaint concerns events that occurred while he was incarcerated at USP Lewisburg, which is located within this judicial district. (Doc. No. 4.)  In an administrative Order dated October 2, 2019, the Court directed Plaintiff either to pay the requisite filing fee or submit a motion for leave to proceed in forma pauperis within thirty (30) days.  (Doc. No. 9.)  The administrative Order was returned as undeliverable with a note that the Bureau of Prisons ("BOP") required Plaintiff's actual name to deliver his mail from the Court.  (Doc. No. 10.)  On October 21, 2019, the Court issued another administrative Order, addressed with Plaintiff's actual name, directing him either to pay the

requisite filing fee or submit a motion for leave to proceed in forma pauperis within thirty (30) days. (Doc. No. 11.) The Court received Plaintiff's motion for leave to proceed in forma pauperis on October 31, 2019. (Doc. No. 12.)

In a Memorandum and Order dated November 21, 2019, the Court granted Plaintiff leave to proceed in forma pauperis, as well as leave to proceed under the John Doe pseudonym. (Doc. Nos. 13, 14.) The Court also performed its mandatory screening of the complaint pursuant to the Prison Litigation Reform Act of 1995 ("PLRA")[1] and concluded that Plaintiff's complaint set forth a plausible failure to protect claim under the FTCA. (Doc. No. 13 at 5-6.) The Court, therefore, directed that the Clerk of Court issue summonses so that the United States Marshal Service could effect service of Plaintiff's complaint upon the United States of America. (Doc. No. 14.)

On December 13, 2019, Plaintiff filed an emergency motion for injunctive relief, requesting a transfer "for his safety" because rumors had spread throughout FCC Coleman that Plaintiff is a "sex offender and rat." (Id. at 2.) Due to Plaintiff's allegations of potential immediate harm, the Court directed the Government to respond promptly to Plaintiff's motion in an Order entered on December 13, 2019. (Doc. No. 18.) The United States of America filed a response on December 18, 2019, arguing that: (1) the Court should deny Plaintiff's motion because it lacks jurisdiction over his claims and Plaintiff cannot establish a legal basis for the relief sought; (2) the Court should screen Plaintiff's complaint and dismiss it; and (3) alternatively, the Court should transfer this matter to the Middle District of Florida. (Doc. No. 19 at 4.) Plaintiff filed his reply brief on January 6, 2020, maintaining that if this Court "will not

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

order the BOP to send Plaintiff to state custody the he will continue to deal with this issue and somebody will be killed." (Doc. No. 20 at 2.)

In a Memorandum and Order dated January 21, 2020, the Court denied Plaintiff's emergency motion for injunctive relief. (Doc. Nos. 22, 23.) The Court also dismissed Plaintiff's request for injunctive relief set forth in his complaint, noting that such relief was not available under the FTCA. (Doc. No. 22 at 7.) The Court also denied the Government's requests to dismiss Plaintiff's complaint or, alternatively, to transfer it to the Middle District of Florida and directed the Government to answer or otherwise respond to the complaint. (Id. at 8.) The Government filed its motion for summary judgment (Doc. No. 26) on February 20, 2020 and its supporting materials (Doc. Nos. 30, 31) on March 5, 2020. To date, Plaintiff has filed neither a brief in opposition nor a motion seeking an extension of time to do so. Accordingly, because the time for filing an oppositional brief has expired, the United States of America's motion for summary judgment is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in

5

his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III. STATEMENT OF MATERIAL FACTS[2]

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . .as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from the United States' Rule 56.1 statement of material facts. (Doc. No. 30.)
     Plaintiff failed to file a response to the United States' statement of material facts in compliance with M.D. Pa. L.R. 56.1. Moreover, while a verified complaint may be treated as an affidavit in opposition to a motion for summary judgment, see Ziegler v. Eby, 77 F. App'x 117, 120 (3d Cir. 2003), Plaintiff's complaint states only that it is "true and correct" and is not sworn under the penalty of perjury. The Court, therefore, will not consider Plaintiff's complaint as evidence to rebut the United States' motion for summary judgment. See Liddick v. Tritt, No. 1:14-cv-1813, 2017 WL 4211051, at *2 (M.D. Pa. Aug. 31, 2017). Accordingly, the Court deems the facts set forth by the United States to be undisputed. See Fed. R. Civ. P. 56(e)(2);

Plaintiff has filed thirty-seven (37) Administrative Tort Claims with the BOP since August of 2015. (Doc. No. 30 ¶ 2.) Two (2) of these claims, both of which were filed in 2015, "are tangentially related to the allegations set forth in [Plaintiff's] complaint." (Id. ¶ 3.) On August 13, 2015, Plaintiff filed Administrative Tort Claim TRT-NER-2015-05814, "alleging he was labeled a 'rat' at USP Hazelton by a Correctional Officer named 'McCune,' who exposed his status as a confidential informant for Special Investigative Services, and the information spread to USP Lewisburg." (Id. ¶ 7.) On February 11, 2016, Plaintiff's claim was denied after the BOP found "no evidence he experienced a compensable loss as the result of negligence on the part of any [BOP] employee." (Id. ¶ 8.) The letter denying his claim informed Plaintiff that "he had six months from February 11, 2016, to initiate an action against the United States in the appropriate United States District Court." (Id. ¶ 9.)

On November 25, 2015, Plaintiff filed Administrative Tort Claim TRT-NER-2016-01149, "alleging that on November 17, 2015, he was attacked by his cellmate after being labeled a 'rat/rapist' by a Case Manager." (Id. ¶ 4.) On May 23, 2016, Plaintiff's claim was denied after the BOP found "no evidence he experienced a compensable loss as a result of negligence on the part of any [BOP] employee." (Id. ¶ 5.) The letter denying the claim informed Plaintiff that "he had six (6) months from May 23, 2016, to initiate an action against the United States in the appropriate United States District Court." (Id. ¶ 6.)

Plaintiff "was required to initiate his action within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." (Id. ¶ 10.) The "operative final denials were on May 23, 2016, and February 11,

---

M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

7

2016, respectively." (Id. ¶ 11.) Plaintiff initiated the above-captioned FTCA action on September 16, 2019. (Id. ¶ 12.)

## IV. DISCUSSION

The Government asserts that summary judgment is warranted because Plaintiff failed to file the above-captioned action in a timely manner pursuant to 28 U.S.C. § 2401(b). (Doc. No. 31 at 3-6.) For the reasons set forth below, the Court agrees with the Government.

The FTCA partially waives the Government's sovereign immunity to allow liability for the torts of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." See 28 U.S.C. § 1346(b)(1). The FTCA authorizes damages suits against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." See id.

Section 2401(b) of the FTCA provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Id. § 2401(b). "[B]oth limitations periods under § 2401(b) must be satisfied in order for an FTCA complaint to be timely." Seiss v. United States, 792 F. Supp. 2d 729, 732 (D.N.J. 2011). Equitable tolling, however, may apply to the FTCA's statute of limitations. See Santos ex rel. Beato v. United States, 559 F.3d 189, 194-97 (3d Cir. 2009). Such tolling "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" See id. (quoting

8

Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999)). Equitable tolling may apply "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." See Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005) (internal citations omitted). A plaintiff, however, "will not receive the benefit of equitable tolling unless []he exercised due diligence in pursuing and preserving [his] claim." See Santos ex rel. Beato, 559 F.3d at 197.

In the instant case, Plaintiff's Administrative Tort Claims related to being labeled as a "rat" or "rapist" by BOP staff were denied on February 11, 2016 and May 23, 2016. (Doc. No. 30 ¶¶ 5, 8.) Plaintiff, therefore, had six (6) months after the denial of each claim to initiate an FTCA action in the appropriate district court. See 28 U.S.C. § 2401(b). Plaintiff, however, did not initiate the above-captioned case until September 8, 2019, when Plaintiff placed his complaint in the prison mailing system for mailing to the Eastern District of Pennsylvania. (Doc. No. 1 at 3, 14); see also Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a prisoner's document is filed at the time he places it in the prison mailing system for forwarding to the court). Plaintiff, therefore, initiated the above-captioned suit approximately three (3) years after the denial of his Administrative Tort Claims, well more than the six (6) month period provided for in § 2401(b). Moreover, nothing in the record leads the Court to conclude that Plaintiff is entitled to equitable tolling of the limitations period. See Santos ex rel. Beato, 559 F.3d at 197.

Accordingly, because Plaintiff's FTCA suit is untimely, the Court will grant the Government's motion for summary judgment.[3]

## V.   CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment (Doc. No. 26) will be granted.  An appropriate Order follows.

---

[3] The Government notes further that "[t]o the extent [Plaintiff's] other generic allegations are not comprised in the aforementioned Tort filings, no other Administrative Tort Claims were filed pertaining to the allegations in the complaint."  (Doc. No. 31 at 5.)  As noted supra, a tort claim is "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."  See 28 U.S.C. § 2401(b).  A claim accrues when the plaintiff has the information necessary to discovery both the injury and its cause.  See United States v. Kubrick, 444 U.S. 111, 119-22 (1979).  Accrual, however, is not tolled until the time when the plaintiff becomes aware that negligence caused his injury.  See id. at 123.  In his complaint, Plaintiff alleges that he became aware of publicly-available information depicting him as a "rat" and "rapist" as early as 2010.  (Doc. No. 1 at 2.)  Accordingly, any allegations not covered by the Administrative Tort Claims noted above are also barred by Plaintiff's failure to comply with § 2401(b).